Dear Mr. Lafser:
This opinion is in response to your request that we answer the following questions:
 1. Do local agencies holding a certificate of authority from the Missouri Air Conservation Commission have authority to regulate emissions from state-owned air pollution sources?
 2. Do local agencies holding a certificate of authority from the Missouri Air Conservation Commission have permitting authority over modifications to existing state-owned air pollution sources located within their area of jurisdiction?
 3. Do local agencies holding a certificate of authority from the Missouri Air Conservation Commission have authority to enter state-owned property for the purpose of inspections of air pollution sources?
 4. Do local agencies holding a certificate of authority from the Missouri Air Conservation Commission have authority to require source testing of state-owned air pollution sources?
 5. Do local agencies holding a certificate of authority from the Missouri Air Conservation Commission have authority to levy fines and/or file suit against state-owned sources of air pollution?
 6. Do local agencies holding a certificate of authority from the Missouri Air Conservation Commission have authority to require state-owned air pollution sources to complete and submit emission inventories?
The answers to these questions involve construction of Section203.140 (all statutory references are to RSMo 1978) of the Missouri Air Conservation Law, Chapter 203, RSMo 1978. That section, in general, sets forth a scheme whereby local governments are authorized to play a role in the regulation of air pollution. Three prefatory comments are in order. First, we note that your questions refer to "air pollution sources." We assume that such term is synonymous with the term "air contaminant source," as used in the Air Conservation Law; we will use the statutory term. Second, the Air Conservation Law refers to an executive secretary to the Air Conservation Commission. In Opinion No. 235 (1974), we held that the position of the executive secretary was abolished by the Omnibus State Reorganization Act of 1974, Senate Bill No. 1, First Extraordinary Session, 77th General Assembly, and that the functions of the executive secretary, after reorganization, were assumed by the director of the Department of Natural Resources. Therefore, where the statutes now refer to the executive secretary, we will refer to the director. Third, Section 203.140 provides that "any city or county of this state is empowered, . . . to enact and enforce ordinances or resolutions with respect to air pollution control. . . ." For purposes of this opinion, we interpret the phrase "local agencies" as used in each of your questions to mean a city or county holding a certificate of authority pursuant to Section203.140.
In answering your questions, we must first determine whether Section 203.140 authorizes cities and counties to engage in the regulatory activity mentioned in each question. We must then determine whether the authority to regulate, if extant, extends to regulation of air contaminant sources operated by the state and its agencies. We initially point out that we cannot answer these questions with regard to the actual effect of the ordinances or resolutions of any particular city or county, as we do not have reference to those ordinances or resolutions. Therefore, we provide our opinion only in terms of the authority of cities and counties to regulate, and do not consider whether such regulation has been accomplished by ordinance or resolution.
Section 203.140.1 provides, in part:
 Subject to the provisions of this section, any city or county of the state is empowered, notwithstanding any limitation or provision of law to the contrary, to enact and enforce ordinances or resolutions with respect to air pollution control to accomplish the purposes of [the Air Conservation Law] which are consistent with the provisions of [the Air Conservation Law] and applicable standards, rules and regulations promulgated hereunder.
The portion of Section 203.140.1 set forth is the starting point for our answer to each of your questions. This provision is, in clear terms, a broad grant of authority to cities and counties. It empowers all cities and counties to adopt and enforce air pollution control ordinances, notwithstanding any other provision of law to the contrary. So long as the local ordinance or resolution is aimed at accomplishing a purpose of the Air Conservation Law, and is not inconsistent with the Air Conservation Commission, the adoption and enforcement of the ordinance or resolution is authorized.
We note that each of your questions asks about the authority of a city or county holding a certificate of authority. Section203.140.1 also authorizes the Air Conservation Commission to grant such certificates to constitutional and special charter cities and counties, and first and second class cities and counties. Upon receipt of a certificate, a city or county may operate within its boundaries its own permit and variance procedures, and if the procedures set forth in Section 203.140.2 are followed, the permit or variance issued by the certificate holder will serve as a permit or variance granted by the Air Conservation Commission as provided in Section 203.140.3.
1. Authority to regulate emissions.
Section 203.050.1(1) provides, in part, that the Air Conservation Commission has the power to adopt rules and regulations providing for:
 (a) Regulation of use of equipment known to be a source of air contamination; and
 (b) Establishment of maximum quantities of air contaminants that may be emitted from any air contaminant source;
It is evident from Section 203.050.1(1) that one of the purposes of the Air Conservation Law is to accomplish regulation of emissions from air contaminant sources. As cities and counties are empowered by Section 203.140.1 to adopt ordinances or resolutions to accomplish the purposes of the Air Conservation Law, we conclude that cities and counties may adopt ordinances or resolutions which regulate emissions from air contaminant sources.
2. Authority to require permits for modifications to existing sources.
Section 203.075.1 prohibits construction of an air contaminant source without a permit, unless the source is within a class of sources exempted by the Air Conservation Commission. Further, Section 203.075.3 provides that "[b]efore issuing a permit to build or enlarge an air contaminant source . . .", the director shall make certain determinations. The specific reference to enlargements in subsection 3 of Section 203.075 leaves no doubt that a permit is required for an enlargement of a source, as well as for its original construction.
We are aware of Air Conservation Commission Regulation10 CSR 10-6.060, respecting permitting requirements. That regulation requires permits for certain categories of "modifications," which are clearly enlargements to existing air contaminant sources, and we assume that you use the term modification in the same sense. Therefore, to the extent that a modification constitutes an enlargement of a source, one of the purposes of the Air Conservation Law is to require permits for such modifications. We believe that a city or county may require a permit for such a modification.
3. Authority to enter property to conduct inspection of sources.
Section 203.050.1(8) empowers the Air Conservation Commission to:
 [E]nter or authorize any representative of the commission to enter at all reasonable times and upon reasonable notice in or upon any private or public property for the purpose of inspecting or investigating any condition which the commission or [director] shall have probable cause to believe to be an air contaminant source.
Under the above-quoted provision, one of the evident purposes of the Air Conservation Law is to authorize entry on both public and private property to conduct inspections of air contaminant sources. Therefore, we conclude that under Section 203.140.1 a city or county may upon proper ordinance or resolution, and within relevant constitutional limitations, enter property to conduct inspections of air contaminant sources.
4. Authority to require source testing.
We understand source testing, as you use the term, to refer to scientific tests conducting at or upon an air contaminant source to determine if that source is in compliance with some regulation or ordinance limiting emissions of air contaminants. Under Section 203.050.1(3)(a), one of the powers of the Air Conservation Commission is as follows:
 To require persons engaged in operations which result in air pollution to file reports containing information relating to rate, period of emission and composition of effluent; . . .
We believe that Section 203.050.1(3), when it authorizes the Commission to require reports from a source regarding the rate and period of its emission, and the composition of its effluent, authorizes the type of source testing to which you refer. It is clear under that provision not only that the testing may be done, but that the source can be required to do the testing. We conclude that Section 203.140.1 authorizes cities and counties to adopt ordinances or resolutions to require source testing to the same extent as may be required by the Air Conservation Commission.
5. Authority to enforce ordinances or resolutions against sources.
We construe your question to ask whether a city or county may by the appropriate action seek to enforce its ordinances or resolutions respecting air pollution control by either suit for injunctive relief, to prevent violations, or suit to impose a penalty, or both. Section 203.140.1 clearly provides that cities and counties may "enforce" their air pollution ordinances and resolutions. However, the precise method of enforcement may be different, depending on which type of local government is considered, and the nature of the ordinance or resolution enacted by the city or county upon which enforcement is based.
Your fifth question raises questions about the ability of a subdivision of the state to levy monetary fines against the state. Because this office has a statutory duty to represent and defend the state, we respectfully decline to render an opinion regarding the ability of a political subdivision to seek financial penalties against the state.
6. Authority to require sources to complete and submit emission inventories.
We understand an emission inventory to refer to a report from the source providing information concerning the types of air contaminant source within a facility, the types and amounts of raw materials and fuels used in each source, and other information needed to calculate emission rates. We believe that such information falls within the purview of the Air Conservation Commission's power under Section 203.050.3(a) to require sources to report information relating to the rate and period of emissions and composition of effluents. We believe that such inventories are further authorized by Section 203.050.1(8), which empowers the Commission to "[d]evelop such facts, and make such investigations as are consistent with the purposes of [the Air Conservation Law]." Therefore, we conclude that Section 203.140.1 authorizes cities and counties to require operators of air contaminant sources to submit emission inventories respecting such sources.
It is clear that the legislature intended the Air Conservation Law to apply to state-owned sources. Section 203.020(13) defines person to include "any agency, board, department or bureau of the state or federal government. . . ." Further, Section 203.020(3) defines air contaminant source as "any and all sources of emission of air contaminants whether privately or publicly owned or operated." The legislature obviously intended that state-owned sources would be subject to the same regulation as all other sources. Therefore, when Section 203.140 authorizes cities and counties to adopt ordinances or resolutions to accomplish the purposes of the Air Conservation Law, that authorization necessarily includes the authority to regulate state-owned sources.
CONCLUSION
It is the opinion of this office that a city or county holding a certificate of authority from the Missouri Air Conservation Commission may adopt ordinances or resolutions to regulate emissions from state-owned air contaminant sources, may adopt ordinances or resolutions which require the state to obtain a permit prior to enlarging a state-owned air pollution source, may adopt ordinances or resolutions which authorize the inspection of state-owned air contaminant sources, and may by ordinance or resolution require emission inventories from and source testing of state-owned air contaminant sources.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Dan Summers.
Very truly yours,
 JOHN ASHCROFT Attorney General